WILLIAM HOMEWOOD, defendant below, appellant, v. THE MAYOR AND COUNCIL OF THE CITY OF WILMINGTON, plaintiffs below, respondents.

An ordinance of the city of Wilmington prohibiting any person occupying or using any land or building for the purpose of producing or preparing beef, mutton, lamb, veal, or pork for sale or market, from selling or exposing the same for sale on the streets or sidewalks of the city, but providing that it shall not apply to any farmer, unless such farmer shall exercise the business of farming for the purpose of producing or preparing beef, mutton, lamb, veal, or pork for sale or market, does not apply to a farmer selling or exposing to sale on the streets of the city mutton produced and prepared on his farm for sale and market, unless it appears that he was at the time exercising the business of farming for that purpose.

APPEAL from the judgment of a justice of the peace in the city, imposing a fine on the appellant for selling mutton on the streets of the city contrary to an ordinance of it. The substance of the ordinance was that no person exercising the business of a butcher or shinner should sell or expose to sale any beef, mutton, lamb, veal, or pork at any place on the streets or sidewalks of the city under a penalty of not less than five nor more than ten dollars; provided, that it should not apply to stands or stalls within it for the exclusive use of butchers. And that any person occupying or using any land or building for the purpose of producing or preparing beef, mutton, lamb, veal, or pork for sale or market should be deemed a shinner or butcher within the true intent and meaning of the ordinance; provided, that nothing in it should be held to apply to any farmer, unless

such farmer should exercise the business of farming for the purpose of producing or preparing beef, mutton, lamb, veal, or pork for sale or market.

The appellant's father, with whom he lived, was the owner of a very valuable farm in the county consisting of near three hundred acres, situated in the vicinity of Newark, and distant ten or twelve miles from the city, on which he resided and which he cultivated uniformly and quite largely in wheat, corn, oats, and hay, and other agricultural products grown on farms in that section of the country, and on which he usually kept a flock of about one hundred sheep of superior stock, and lambs, some of which he had several times sold at highly remunerative prices to other farmers and sheep-growers on account of their improved breed and strain. Some of his sheep, however, had from time to time been slaughtered on the farm, and the appellant, his son, by his direction had on several occasions taken the mutton for sale to Wilmington and sold it on the streets and near the sidewalks of the city, and it was for such a sale the proceeding below had been instituted and the judgment in it had been rendered against him in the case.

*Higgins*, for the plaintiffs below, asked the court to charge the jury that if the appellant was engaged in the business of farming on his farm, large, valuable, fertile, and productive as it might be, and had been described to be by some of the witnesses, but had raised and slaughtered on it and sold on the streets of Wilmington any number of sheep in the mode and manner interdicted by the ordinance, and in so doing had carried on the business of farming upon it for the purpose in part, or to any extent of producing or preparing for sale or market the mutton which by his direction had been sold by his son on the streets of the city in the manner proved and admitted by him in his testimony, however incidental or subordinate it might have been in its nature or amount, either to the general business of farming carried on or the more important and profitable purposes for which it was carried on by him, he was guilty of a violation of the true intent and meaning of the ordinance in question.

*Lore,* for the defendant :   As to the true intent and meaning, although the proper legal construction was by no means clear, the indirect design and purpose of it he thought was obvious, and that was to secure by city legislation a monopoly in the trade to which it relates to the butchers of Wilmington at the expense of the farmers in the county who reside near enough to attend its markets, and as such it was in derogation of the common law and the rights of the people of the city as well as of the farmers referred to, and it demanded and should receive from the court a strict construction in the interpretation and application of it in any case, strict as to what shall constitute the offense alleged as a violation of it, and more particularly so since it was not only an illiberal and impolitic prohibition, but because it was penal in its character.   The respondent, however, was not a farmer and therefore did come within the terms or the meaning of the ordinance, while his father, whose agent he was in the matter complained of, had been called and examined as a witness on the other side, had expressly stated that he did not exercise or carry on the business of farming for the purpose of producing or preparing mutton for sale or market, although a few of his sheep were slaughtered and sold when the butchers would not buy them at prices at which he could afford to sell them, as well and truly he might say of such a farm as he owned, of over two hundred and seventy acres, with a flock of not more than a hundred and twenty sheep at any time upon it, of the best and most improved breed, and which were both too valuable and too costly to be sold and sacrificed in the form of mutton, as any purpose of his in either buying or raising them, and much less as any purpose of his in exercising the general business of farming on it upon the large scale on which that business had so long been carried on by him.

*Higgins* replied.

*The Court, Gilpin, C. J., charged the jury :* That it appeared from the testimony of Mr. Hawkins, the clerk of the market, that the proceedings in the case had been instituted at the instance and upon the complaint of the butchers of the city, from

which it might be reasonably inferred that they were principally, if not the only persons who were to be benefited by the ordinance and the enforcement of it. But although it was in that aspect of it in derogation of the common law and the common right of the citizen, the power conferred by the charter on the city council to establish ordinances for the regulation of such business within the limits and on the streets of the city was a police power, and every ordinance should receive a reasonable interpretation so as best to subserve the purpose and promote the object, that is to say, the true and legitimate purpose and object for which the power to establish the ordinance was granted in the charter.

The words of the ordinance in question were peculiar, and certainly they do not clearly and unquestionably convey the idea or the meaning claimed for them by the counsel for the respondents. In the first place, it declares, so far as it is now necessary to notice its language, " that any person occupying or using any land or building for the purpose of producing or preparing beef, mutton, lamb, veal, or pork, for sale or market, shall be deemed a shinner or butcher," and in the next place, that this vague and general definition shall not " apply to any farmer unless such farmer shall exercise the business of farming for the purpose of producing or preparing beef, mutton, lamb, veal, or pork, for sale or market." And it was under these latter words that the appellant was charged as the agent of his father, or rather the father as his principal, with exercising the business of farming for the purpose of producing or preparing mutton for sale or market, and selling it on the streets of Wilmington contrary to the ordinance. And when we come to learn the size of the farm, the scale on which the appropriate and general business of farming is carried on upon it, and the value and importance of the several and usual farming purposes for which it is carried on, and the limited number of sheep kept on it and the insignificant amount of mutton produced on it and sold from it, we cannot conceive how it can reasonably be said or believed that such a farmer is exercising the business of farming for such a purpose. So far as it is intended to apply to farmers, the violation of the ordinance

does not consist at all in the business simply for the purpose of producing or preparing mutton for sale or market, but in exercising the business of farming for that purpose.   And what did that word *purpose* in that connection import?   It had a well-established meaning and signification in our language and was properly defined to be that which a person sets before himself as an object to be reached or accomplished, the end or aim to which the view is directed in any plan, measure, or exertion ; 2, intention, design; 3, end, effect, consequence ; 4, of purpose, on purpose, for the purpose, that is, with previous design.

If, therefore, the jury believed from the evidence that the appellant and his father were exercising the business of farming for the purpose of producing or preparing mutton for sale or market at the time when the appellant sold the mutton as alleged on the streets of Wilmington, he was guilty of a violation of the ordinance in question, but if they did not so believe from the evidence, he was not guilty of a violation of it.

Verdict, not guilty.